CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 3 0 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| THOMAS R. LOVE, | ) | |
| Plaintiff, | ) | Civil Action No. 7:07cv00126 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Thomas R. Love ("Love"), brought this action pursuant to 42 U.S.C.

§ 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social

Security's ("Commissioner") final decision denying his claim for disability insurance benefits

("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security

Act ("Act"). This case is now before the court on the defendant's motion for summary judgment

and was referred to the undersigned for Report and Recommendation. On this appeal, Love

argues that the Commissioner erred by failing to properly assess his residual functional capacity

("RFC") and by concluding that he is not disabled. Having reviewed the record, and after

briefing and oral argument, the undersigned concludes that the Commissioner's decision is

supported by substantial evidence and recommends that the court affirm the Commissioner's

decision and grant the defendant's motion for summary judgment.

## I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-

weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial

review of disability cases is limited to determining whether substantial evidence supports the

Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. §§ 404.1520, 416.920; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

## II.

At the time of the Commissioner's decision, Love was 49 years old and had completed high school.  (Administrative Record ("R.") at 112, 136)  Prior to his alleged onset of disability, Love worked as a carpenter and as a certified nursing assistant.  (R. 147)  Love protectively filed an application for DIB and SSI on October 25, 2001.  (R. 23, 112, 146)  His application was denied initially and upon reconsideration.  (R. 43-46, 530-49)

Love subsequently re-applied for DIB and SSI on September 26, 2002.  This application was denied initially and upon reconsideration.  (R. 75-79, 82-84)  Love then requested an administrative hearing, which was held on March 24, 2004.  (R. 88, 564-600)  Based on the testimony presented at this hearing, the Administrative Law Judge ("ALJ") determined that Love was not disabled within the meaning of the Act.  (R. 49-59)  Love requested that the Appeals Council review the ALJ's decision.  (R. 101)  Upon review, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration.  (R. 65-67)

A second administrative hearing was held on September 8, 2005.  (R. 601-45)  Based on the testimony presented at this hearing, including that of a vocational expert ("VE") and a medical expert ("ME"), and the medical evidence of record, the ALJ concluded that Love was not disabled within the meaning of the Act.  (R. 24)  At step one of the disability evaluation process, the ALJ found that Love had not engaged in substantial gainful activity since his alleged onset date of disability.  (R. 25)  At steps two and three, the ALJ found that Love's back disorder, migraines, hypertension, status-post rotator cuff tear, and hepatitis C were severe impairments, although not severe enough to meet or equal the listing requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 29-30)

3

Before proceeding to step four, the ALJ found that Love retains the RFC to perform a significant amount of work at the sedentary level, but requires a sit/stand option, the opportunity to stretch throughout the day, and cannot lift objects overhead with his right arm or be exposed to food, hazardous machinery, heights, or public interactions which might transfer bodily fluids. (R. 33) In making this assessment, the ALJ determined that Love's statements about the intensity, duration, and limiting effects of his pain and symptoms were not fully credible based upon both the medical evidence and Love's own statements regarding his daily activities. (R. 30-33) At step four of the analysis, the ALJ determined that Love is unable to perform any past relevant work, and at step five, the ALJ found that Love is capable of making a successful adjustment to work that exists in significant numbers in the national economy.[1] (R. 33-34) Accordingly, the ALJ concluded that Love was not disabled.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Love's request for review. (R. 9-12) Love now appeals that decision and argues that the Commissioner's decision is not supported by substantial evidence.

### III.

Love contends that the Commissioner improperly evaluated the medical evidence and erred by concluding that Love retains the RFC to perform a significant amount of work at the sedentary level. In support of this contention, Love avers that the Commissioner: (1) did not properly consider Love's migraine headaches, (2) erred in finding Love's statements of pain not

---

[1] In making this finding, the ALJ relied on the VE's testimony that despite Love's specific work restrictions, he is capable of working as a telephone order clerk with 500 positions regionally and 16,000 nationally, or as a telephone worker with 870 positions regionally and 36,000 nationally. (R. 34)

4

credible, and (3) improperly considered Love's lack ongoing treatment for his medical conditions.[2] These contentions will be addressed in turn.

### A. The ALJ properly considered Love's migraine headaches

Love contends that the ALJ failed to both consider the effects of his frequent migraine headaches, some of which last several days at a time, and address how someone with such a disability could work 40 hours a week as a telephone order clerk. His contention is without merit.

At the administrative hearing, Love testified that he experiences migraines at least once a week and that without medication, his migraines last for two or three days at a time. (R. 622) With medication, however, Love testified that his headaches are kept at a bearable level. (R. 575) The medical record shows that Love complained of migraine headaches as early as April 24, 2000. (R. 421) On December 11, 2001, Love was seen by Dr. Samarasinghe, a pain management specialist, and reported that he had not taken his blood pressure medication for approximately one month, which had caused an increase in his migraines to an average of two or three migraines per month. Dr. Samarasinghe recommended that Love restart his blood pressure medication in order to help with his migraines. (R. 334)

_____

[2] In his motion, Love also make the general assertion that his "various symptoms including a back disorder, depressive disorder, migraines, hypertension, status-post rotator cuff tear, and hepatitis C were of record with other doctors including, but not limited to, Dr. Sonya N. Bohon." Pl. Mt. at 12. As noted, however, the Commissioner determined that Love's back disorder, migraines, hypertension, status-post rotator cuff tear, and hepatitis C were severe impairments. (R. 29). The Commissioner also acknowledged Love's depression, but found that it was not a severe impairment because it caused only minimal functional limitations during work-like activities. (R. 29) Thus, the Commissioner addressed all of Love's claimed impairments.

5

Over the next two years, Love was prescribed various medications to treat his migraines, including Imitrex (R. 331), Duradrin (R. 374) and Relpax, (R. 457). On September 16, 2003, Love reported to Dr. Robert Day, M.D. of Carilion Medical Associates that his migraines were stable and had "really improved" with Relpax. (R. 454) During a visit with Dr. Day on October 22, 2003, Love reported that his headaches had been about the same in frequency and character. (R. 450)

Substantial evidence supports the Commissioner's conclusion that Love's migraine headaches are not disabling. In order for impairments to be found disabling, they must be accompanied by functional limitations that render the claimant unable to work. Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990). Furthermore, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). In this case, although Love's migraines are well documented throughout the record, there is no evidence that his migraine headaches prevent Love from working forty hours each week. Rather, the medical evidence demonstrates that Love reported improvement and stability of his migraine headaches with medication and that medication keeps his headaches to a bearable level. Accordingly, the Commissioner properly considered and accounted for Love's migraine headaches in assessing the RFC.

### B. The ALJ properly found Love's assertions of pain and discomfort not credible

Love contends that the ALJ erred in finding Love's complaints of debilitating pain and discomfort not credible. Specifically, he argues that the ALJ improperly concluded that Love's ability to do daily tasks evidenced his ability to work a 40-hour week, gave too much significance to Love's physicians' warnings about overuse of narcotic medication, and erred in concluding

6

that Love's back pain was not severe. For the following reasons, the undersigned finds that these contentions have no merit.

Pursuant to the social security regulations, allegations of pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929. The regulations set forth a two-step process for evaluating symptoms such as pain. First, there must be an underlying medically determinable physical impairment that could reasonably be expected to produce the individual's pain or other symptoms. Craig v. Chater, 76 F.3d 585, 593 (4th Cir. 1996). Once established, the intensity, persistence, and limiting effects of the individual's symptoms must be evaluated to determine the extent to which they limit the claimant's ability to do basic work related activities. Id. at 595. In making this finding, the ALJ must determine the credibility of the claimant's statements based on consideration of the entire record. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). A claimant's "symptoms of pain need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Craig, 76 F.3d at 596.

Love first argues that the ALJ erred in concluding that Love's ability to do daily tasks, such as watching television, reading, operating a motor vehicle, preparing meals, and visiting friends provide evidence that Love is able to work a 40-hour week. In order to assess a claimant's credibility, however, the ALJ may properly consider factors such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms;

7

(5) treatment received by the claimant for pain or other symptoms; (6) measures undertaken to relieve pain; and (7) other factors concerning functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The record reflects that the ALJ, in finding Love not credible, considered not only Love's ability to perform daily tasks and activities, but also considered the testimony of the ME and the objective medical evidence, including Love's ability to sit, stand, move about, lift, carry, hear, see, and speak, and his physicians' recommendations of different conservative treatment modalities. (R. 31)  The ALJ's consideration of Love's ability to perform a wide variety of daily activities in order to assess his statements of pain was therefore entirely proper.

Love next contends that the ALJ erred in concluding that Love's extreme pain was not credible due to, inter alia, his "apparent drug seeking motivation." (R. 11)  Contrary to Love's assertion, however, the record reflects that he made requests for stronger pain medications which were refused by certain doctors, (R. 256, 247), he sought narcotic pain prescriptions from multiple providers at the same time, (R. 256, 230), and was terminated from a doctor's care for failing a drug test. (R. 311, 345)  While the ALJ considered this evidence, the ALJ also considered other factors in concluding that Love's complaints were not credible.  Rather, as discussed, the ALJ also considered Love's "ability to perform a wide variety of daily activities, intermittent medical care, non-compliance with the recommendations of his treating and examining physicians, positive reports for drug use from his treating physician, and the use of over-the-counter pain medications." (R. 31)  Thus, the ALJ did not err by considering evidence of Love's drug seeking motivation as one of several factors in concluding that Love's statements of pain were not entirely credible.

8

Finally, Love asserts that the ALJ erred in finding that Love's statements regarding the severity of his back pain were not credible. He argues that his treating physicians' suggestions that he may benefit from the surgical implantation of a narcotic pump demonstrate that he suffered from severe back pain. While it is so true that such a measure was suggested at one point, it was never implemented as Love was dismissed form Dr. Samarasinghe's practice for testing positive for cannaboids. At the same time, other records reflect improvement in his back pain. (R. 450, 357) While there is no question that Love suffers from some level of back pain and discomfort, the undersigned finds that there is substantial evidence to support the Commissioner's conclusion that Love's statements of totally disabling back pain are not consistent with the evidence of record. Significantly, Dr. Ward Stevens, a medical expert, testified that based on the medical evidence of record, Love could perform work at the sedentary level of exertion. (R. 632)

Review of the transcript of the administrative hearing reveals that Dr. Stevens, a retired board certified neurosurgeon, both reviewed Love's medical records and heard his testimony at the administrative hearing. Dr. Stevens testified about Love's hepatitis C and the medical problems posed by persons displaying drug seeking behavior. Dr. Stevens noted that Love had not taken any narcotics over the past several months prior to the hearing, that his hepatitis C was asymptomatic, and that Love's description of his degenerative back problem were reasonable. (R. 629-632) After reviewing the medical records and listening to Love, Dr. Stevens concluded that his work capabilities were at the true sedentary level with a sit-stand option. (R. 632) Dr. Stevens also limited Love to not working above his head and not in food service or other capacity with the public when blood or other bodily fluid could be transferred due to his hepatitis C.

9

(R. 633) Dr. Stevens reviewed Dr. Day's October, 2003 functional evaluation of Love, and rejected it for two reasons. First, Stevens testified that Love's situation apparently had improved between October, 2003 and the time of the March, 2004 hearing. (R. 634) Second, Dr. Steven's discounted the extent of the limitations listed by Dr. Day, noting that if an individual had these types of limitations, he would have to be on a stretcher. (R. 635) Even considering all of Love's issues with his back, potential drug abuse and hepatitis C, Dr. Stevens felt that Love would "be a lot happier man if he can, you know, get himself doing some type of work." (R. 636)

The testimony of Dr. Stevens, coupled with evidence of Love's documented drug-seeking behavior, his ability to perform a wide variety of daily activities, and the fact that Love had recently taken only over-the-counter medications to treat his back pain, provide substantial evidence to support the ALJ's conclusion that Love is not totally disabled by his back pain. (R. 31)

### C. The ALJ properly considered Love's lack of treatment for depression.

Love's final argument is that the Commissioner erred in considering Love's lack of ongoing treatment for his depression and nervousness as an indication that his mental impairments are not severe. A medically determinable impairment is "severe" if it significantly impairs an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); Evans v. Heckler, 734 F.3d 1012, 1014 (4th Cir. 1984) ("An impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.") (emphasis in original). In rating the degree of functional limitation resulting from the impairment, the ALJ considers the

10

extent to which the claimant's impairment interferes with his "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).

In his office notes from August 6, 2002, Jeffrey Lawrence, P.A., noted that Love has a history of depression that responds well to medication. (R. 368) On December 23, 2003, during a visit with Dr. Day, Love complained of not doing well emotionally or financially, but denied suffering from depression or anxiety. (R. 448) Nearly a year later, on November 12, 2004, Love complained to Dr. Day of poor mood, sleep, and concentration, as well as a depressed mood. Dr. Day planned to try Cymbalta for Love's mood and provided Love with samples. (R. 472)

The ALJ concluded that Love's depression and nervousness were not severe because they caused minimal functional limitations during the completion of work-like activities. In making this conclusion, the ALJ noted Love's ability to perform a wide variety of daily activities and to maintain a productive lifestyle, despite his depression. Furthermore, the ALJ noted that Love was able to concentrate well enough to make decisions, cooperate throughout an interview, and operate a motor vehicle, and that in the social sphere, Love went to the grocery store, visited friends and relatives, and went out about once weekly. Finally, the ALJ noted that Love has not received ongoing treatment for his depression and nervousness.

The undersigned finds that the record lacks any evidence showing that Love's depression and nervousness impair his mental ability to do basic work activities. Furthermore, the Commissioner did not err by considering Love's lack of ongoing treatment for his depression and nervousness when determining whether his mental impairments are severe. The record shows that while Love frequented several physicians over a five-year period for his back disorder,

11

migraines, hypertension, rotator cuff tear, and hepatitis C, he mentioned his depression to physicians approximately once a year. Furthermore, Love reported that his symptoms responded well to medication. See Gross, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Accordingly, substantial evidence supports the Commissioner's finding that Love's depression and nervousness are not severe.

## IV.

Considering the evidence in the administrative record as a whole, the court finds that the Commissioner's decision meets the substantial evidence standard. Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case; rather, the court's role is to determine whether the Commissioner's decision is supported by substantial evidence. Considering that the Supreme Court has defined substantial evidence not to be a large or considerable amount of evidence, more than a mere scintilla and somewhat less than a preponderance, Pierce v. Underwood, 487 U.S. at 565, Richardson v. Perales, 402 U.S. at 401, it is clear that the Commissioner properly considered Love's migraine headaches, concluded that Love's statements of pain were not credible, and considered Love's lack ongoing treatment for his medical conditions.

In affirming the final decision of the Commissioner, the court does not suggest that Love is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Love's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial

evidence. Accordingly, the undersigned recommends that the Commissioner's decision be affirmed and the defendant's motion for summary judgment be granted.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

**ENTER**: This ___30___ day of May, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge

13